DECISION AND JUDGMENT
{¶ 1} This appeal is from the October 30, 2007 judgment of the Lucas County Court of Common Pleas, which terminated the parental rights of appellant, Gilbert R. Upon consideration of the assignments of error, we affirm the decision of the lower court. Appellant asserts the following assignments of error on appeal: *Page 2 
 {¶ 2} "Assignment of Error No. 1: The Trial Court erred in terminating Father's parental rights because LCCS did not properly exercise its duty to use diligent efforts to help Father with the case plan to facilitate reunification.
 {¶ 3} "Assignment of Error No. 2: The Trial Court abused its discretion in rendering an order terminating Father's parental rights because Shelby has a right to have contact with her siblings."
 {¶ 4} On May 18, 2006, Lucas County Children Services, appellee, filed a complaint in dependency and neglect and moved for temporary custody of Shelby G. and three of her siblings who are not involved in this appeal. The court found that Shelby G. and her half-siblings were neglected and dependent children. Temporary custody of Shelby G. was originally granted to an individual, but was transferred to appellee on February 12, 2007. Shelby G. had always resided with her mother and her husband, who are not parties to this appeal. Shelby G. was removed from her mother's care in 2002 and returned to her mother in 2003. It was not until 2004 that it was discovered that appellant was Shelby G.'s father. The children were removed from their mother's care again in 2005, while Shelby G.'s mother resided in Wood County. In 2006, after Shelby G.'s mother returned to Lucas County, the children were removed from the mother again because of her substance abuse and her inability to care for her children. The agency was unable to place Shelby G. with her father because of his prior violent behavior and drug involvement. *Page 3 
 {¶ 5} As part of appellee's case plan to reunify appellant with his daughter, appellee required that appellant show an active interest in Shelby G., pay child support, visit Shelby G., and arrange for an assessment of what services are needed to regain custody of Shelby G. The case plan was later amended to require that appellant specifically participate in substance abuse and anger management assessment and completion of the recommended services. Appellant was also required to attend parenting classes.
 {¶ 6} In March 2007, appellee moved to modify the prior award of temporary custody and for a termination of parental rights and for an award of permanent custody to appellee pursuant to R.C. 2151.414. At the permanent custody hearing, the following pertinent evidence was submitted.
 {¶ 7} Appellant admitted to prior use of alcohol, marijuana, and cocaine. However, he indicated conflicting dates of use on two different assessments. Appellant tested positive for cocaine use in May and September 2006. After assessment, he was referred to an intensive twelve-week outpatient program in which he had previously participated. The program required four group counseling sessions a week, each lasting two hours. The program also required individual counseling, case management services, crisis intervention, and five community support meetings a week. The program is not designed to be offered at different times.
 {¶ 8} Appellant attended the program for the approximately the first four weeks and then stopped attending on January 31, 2007. During the time that he did attend the *Page 4 
program, he was cooperative. He later informed the case manager that he had obtained employment, but did not make contact with appellee again. He was formally discharged from the program on March 2, 2007. Had appellant sought to be readmitted to the program prior to March, 2007, he would have been admitted.
 {¶ 9} Appellant's caseworker testified that in January 2007 appellant had expressed general difficulty in working to provide for his current family while maintaining services and his problem with obtaining transportation. However, part of his transportation issues were the result of the fact that appellant had resided both with his wife in Swanton and his mother in Toledo. At the permanent custody hearing, he testified that his employment was the cause of his inability to complete the program. However, appellant also testified that he has not paid child support for Shelby G. because he was not earning any money at the time paternity was established in 2004 and was not required to at that time. He claimed to have provided for her in the past and had brought gifts directly to Shelby G. in 2007, although he had not visited her between February and June, 2007. He further testified that he only gives his wife $50 a month to support his older daughter. Appellant testified that he works for Swan Creek Candle Company as a fork-lift driver and has held a full-time position since approximately April 2007. He did not, however, testify regarding his employer prior to that time.
 {¶ 10} Since January 2007, the caseworker has not had any contact from appellant and does not know where he resides. She sent out letters monthly both to appellant's wife's home and his mother's home proposing three different dates and different times *Page 5 
and offering to coordinate other meeting times. At those meetings, appellant could be subject to random drug screening. The letters were not returned, and appellant did not contact her. At the hearing, appellant admitted that he had received other mailings with regard to other matters and had not opened any of the letters because his name was not spelled correctly or the address was not correct.
 {¶ 11} On January 8, 2007, when appellant tested positive for cocaine use, appellant denied having ingested any cocaine. He continues to deny substance abuse. He stated that he had only been selling crack cocaine and must have absorbed it by handling it. He testified that he had successfully completed a substance abuse program 15 years ago, and was not currently using cocaine. Although he had already completed the program and was not using drugs, he testified that he was willing to complete a similar program again. When appellant was screened for drug use at a pretrial in June, 2007, the results were negative.
 {¶ 12} With regard to the issue of visitation with his daughter, there was evidence that appellant's visitations were ended because he was not attending them and had attempted to send his wife and mother instead. His visitations were restored for several different days, but after inconsistent attendance, his visitations were again terminated. His last visit was on June 9, 2007. Prior to that, he last visited
 {¶ 13} Shelby G. in February, 2007. Although visits were scheduled during that time period, appellant did not attend. Appellant also did not inquire as to Shelby G.'s welfare or send her letters or cards. *Page 6 
 {¶ 14} Appellant, however, testified that when he first found out that Shelby G. was his daughter in 2004, he visited her every week, through rain or snow. He further testified that he had tried to visit his daughter in 2007, but that he was prevented by the inconvenient times that were set up and because they required that he show up one-hour early and he could not do that. He showed up a minute late several times but did not sign in because they would not let him see his daughter. He admitted that he did not take any legal action to visit his daughter under a different schedule. He testified that he could not work with the caseworker and accused her of canceling his visitations and being biased against him since the case was first opened.
 {¶ 15} Appellant and his wife also testified at the hearing that appellant does not reside with his wife because she has subsidized housing and appellant cannot reside there because of his prior criminal convictions. The caseworker attempted to visit the home of appellant's wife to see if it would be suitable for placement, but was told by appellant's wife not to come because appellant was not there. Appellant testified that he works in Swanton and cares for his wife's children at night during the week. But, his permanent home is in Toledo with his mother.
 {¶ 16} Appellant's wife testified that appellant does not live with her because they cannot afford to live together as a family. Neither appellant nor his wife were forthright in their testimony about the financial structure of their household. Appellant had no knowledge of his wife's income sources. She further testified that appellant visits her children, one of who is his child, and spends the night only once or twice a month. She *Page 7 
testified that it was a struggle for appellant to meet all the demands of appellee while maintaining a job. She tried to help by getting a job, but that did not work out and she is currently unemployed. She testified that appellant lost his job in January because of the juggling act. It was only after he quit the substance abuse program, that appellant was able to find another job. She also testified that appellant tried to find an evening program. However, appellant testified that he never told his caseworker about the program, only the case manager at the substance abuse program in which he was enrolled.
 {¶ 17} The husband of Shelby G.'s mother testified that he knew that appellant used crack cocaine because they had smoked it together for the first time in November 2006 and then on other occasions afterward. The husband also testified that he had purchased crack cocaine from appellant and that appellant forced Shelby G.'s mother to prostitute herself for drug money. Appellant's caseworker testified that she had heard similar stories from Shelby G.'s mother. Appellant denied all of these events. Furthermore, appellant's pastor testified as to appellant's good character and appropriate parental behavior.
 {¶ 18} The guardian ad litem recommended that appellant's parental rights be terminated because of appellant's denial of drug abuse and failure to complete the substance abuse program. She believed that it was time that Shelby G. had a permanent home and there was one available that would be appropriate for her. Of the adoptive *Page 8 
homes under consideration, the guardian believed that Shelby G. would be able to maintain a relationship with one or more of her half-siblings.
 {¶ 19} Following the permanent custody hearing, the trial court found that appellant had completed substance abuse and mental health assessments and participated in parenting classes. He did not, however, complete the program required to address his substance abuse. Furthermore, he did not visit his daughter consistently and lacked housing. Therefore, the trial court found that appellant had not made sufficient progress on his case plan to be reunited with his daughter now or in the foreseeable future. The court further found that appellee had proven by clear and convincing evidence that it had provided reasonable case planning and diligent efforts to remedy the problems that caused the removal of Shelby G., but that appellant had failed continuously and repeatedly to substantially remedy the conditions that caused removal. The court further found that it was in the best interest of Shelby G. to terminate appellant's parental rights and award appellee permanent custody of the child.
 {¶ 20} In his first assignment of error, appellant argues that LCCS did not make a good faith effort to help appellant complete his case plan so that he could be reunited with his daughter. He contends that he realized that he could not comply with the case plan and continue to support his family and asked for assistance from LCCS. He argues that he was not given an alternative treatment service location; LCCS would not accept visits by appellant's wife and mother when he was unable to make the visits because of work; LCCS would not consider his wife's suitability for placement; and that LCCS *Page 9 
would not give appellant a six-month extension on his drug treatment program, which he had not been able to complete because of his work schedule.
 {¶ 21} In determining pursuant to R.C. 2151.414(E) whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with a parent, the court must find by clear and convincing evidence that the agency provided "reasonable case planning and diligent efforts" to remedy the problems that initially caused the child to be placed outside the home. R.C. 2151.414(E). This standard is met by "* * * a good faith effort which is `an honest, purposeful effort, free of malice and the desire to defraud or to seek an unconscionable advantage.'" In re D.S., 2d Dist. No. 2007 CA 57,2008-Ohio-198, at ¶ 8, quoting In re Cranford (July 24, 1998), 2d Dist. Nos. 17085 and 17105, citing In re Weaver (1992), 79 Ohio App.3d 59.
 {¶ 22} The only evidence of appellant's work conflict was testimony of appellant and his wife. However, their testimony was vague as to when appellant worked and how they financially support themselves and their family. The trial court judge specifically noted at the hearing that appellant's testimony was not credible. However, even assuming that the trial court found their testimony credible, there is no evidence in the record specifically indicating how appellant's work conflicted with the program and appellant admitted that he did not directly contact his caseworker to discuss a specific work conflict and alternative options. While appellant testified that he learned of an alternative program that he could attend, he did not convey this information to his caseworker. *Page 10 
Furthermore, at the same time appellant quit attending the program, he also tested positive for drug use. To explain why he would have tested positive, appellant admitted to selling cocaine, which is evidence sufficient by itself to establish that appellant had not remedied his drug issues sufficient to parent a child.
 {¶ 23} As to appellant's visitations, the caseworker rescheduled appellant's visits several times to accommodate his schedule. It was only after he failed to make those visits that the caseworker imposed a requirement that he show up one hour early to ensure that the child was not transported unless appellant was coming. Furthermore, visits by family members did not satisfy the requirement that appellant visit his child.
 {¶ 24} As to consideration of placement in the home of appellant's wife, appellant failed to be present the day of the visit by the caseworker. Furthermore, appellant and his wife reluctantly provide little information regarding the issue of how their home is financially supported.
 {¶ 25} We find that there was evidence to support the trial court's finding that appellee exercised reasonable case planning and diligent efforts to help appellant remedy the problems that prevented placement of his daughter in this care in the first place. Granting appellant an extension of time to complete the requirements of his case plan would not be enough to enable appellant to overcome his drug issues. Appellant's first assignment of error is not well-taken. *Page 11 
 {¶ 26} In his second assignment of error, appellant argues that the trial court abused its discretion by termination appellant's parental rights because it did not consider the relationship of Shelby with her siblings.
 {¶ 27} Interaction with siblings is a consideration when making a best interest determination regarding placement with the agency in a permanent custody hearing. R.C. 2151.414(D)(1). However, the court also considers the wishes of the child. R.C. 2151.414(D)(2).
 {¶ 28} The child in this case has many half-siblings, only one of which is appellant's child who resides with his wife. Shelby G. herself expressed a desire to retain contact with her half-siblings with whom she has always resided and another half-brother. She did not mention appellant's daughter. Shelby G. also expressed a desire not to live with her father. Apparently, the sibling relationship with appellant's other daughter was not very well established.
 {¶ 29} It is clear from the hearing transcript that the court did consider Shelby G.'s wishes and all of her sibling relationships. However, not all of those relationships could be maintained once the parental rights of Shelby G.'s parents were terminated. The court decided in favor of the strongest relationships. Therefore, we find that the allegation that the trial court did not consider sibling interaction is not supported by the record. Appellant's second assignment of error is not well-taken.
 {¶ 30} Having found that the trial court did not commit error prejudicial to appellant, the judgment of the Lucas County Court of Common Pleas is affirmed. *Page 12 
Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, P.J., Arlene Singer, J., CONCUR. *Page 1